**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

**MARIA DELVALLE ,** on behalf of herself and all others similarly situated,

Plaintiff,

-v.-

**RHONE APPAREL, INC.,**

Defendant.

-------------------------------------------------------------x

Case No. ___________

**CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL**

Plaintiff MARIA DELVALLE , ("Plaintiff" or "Mr. Parker") individually and on behalf of himself and all others similarly situated (collectively, "Plaintiffs"), by and through his undersigned counsel, Robert Schonfeld, Esq. of JOSEPH & NORINSBERG, LLC, brings this action against Defendant, ("Rhone"" or "Defendant"), for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq*., the New York Human Rights Law, N.Y. Exec. Law §§ 290 *et seq*., and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-100 *et seq*., arising from Defendant's failure to ensure that its ecommerce Website www.rhone.com is accessible to blind and visually impaired individuals.

## INTRODUCTION

1. Plaintiff, MARIA DELVALLE, is a resident of New York and is permanently disabled due to severe visual impairment and legal blindness. Ms. DelValle suffers from proliferative diabetic retinopathy associated with longstanding diabetes mellitus, which has caused significant and irreversible damage to her vision. Her treating ophthalmologist, Jonathan N. Kruh, M.D., confirms that Ms. DelValle has significantly decreased visual acuity, blurred vision, difficulty recognizing detail, and an impaired ability to perform activities requiring functional vision. Dr. Kruh measured Ms. DelValle's visual acuity at 20/400 in her right eye and 20/200 in her left eye and documented proliferative diabetic retinopathy complicated by traction retinal detachment. Dr. Kruh

further advised Ms. DelValle to continue utilizing low-vision aids and screen-reading software and referred her to vision-rehabilitation services for additional support. (See **Ex. A – Maria DelValle Medical Report**).

2. Plaintiff is a proficient user of screen-reader technology, including NVDA, and relies upon keyboard navigation and accessible website functionality to browse, understand, and interact with digital content. Because Plaintiff cannot independently perceive information presented solely through visual means, he depends upon websites being designed, constructed, and maintained in a manner compatible with the assistive technology necessitated by his disability. Meaningful alternative text, properly identified interactive controls, descriptive links, accessible navigation, and information that can be recognized and communicated by screen-reading software are essential to Plaintiff's ability to independently access and utilize digital content.

3. As a blind and visually impaired consumer, Ms. DelValle relies upon screen-reading software, including NonVisual Desktop Access ("NVDA"), and keyboard navigation to browse websites, obtain product information, compare merchandise and prices, determine product availability, evaluate purchasing and delivery options, and complete online purchases. Screen-reading software converts digital content into synthesized speech or refreshable Braille, enabling blind and visually impaired users to navigate websites independently. For this technology to function effectively, websites must be properly coded to provide meaningful alternative text for images, programmatically determinable labels for interactive controls, descriptive link text, logical heading structures, keyboard-accessible navigation, and properly implemented ARIA markup. When websites fail to incorporate these accessibility requirements, screen readers cannot reliably interpret or communicate website content, depriving blind and visually impaired consumers of independent access to the goods and services offered online.

4. Defendant, RHONE APPAREL, INC. ("Rhone" or "Defendant"), is the owner and

operator of the Rhone brand and its ecommerce Website, www.rhone.com (the "Website"). Through its Website, Defendant markets and sells apparel and related merchandise to members of the public. The Website allows consumers to browse product collections, review product photographs and descriptions, identify colors and sizes, determine product availability, obtain information concerning materials and garment care, evaluate purchasing and delivery options, add merchandise to a shopping cart, and complete purchases.

5. Plaintiff visited the Website on September 10, 2026, September 15, 2026, and October 5, 2026, using NVDA and keyboard navigation. During those visits, Plaintiff sought to investigate and purchase specific merchandise sold by Defendant, including Defendant's Upstate Cable Sweater for herself and the Quantum Travel Pant. Plaintiff became interested in Defendant's apparel after her sister, who had purchased several articles of clothing from Defendant, told Plaintiff how much she liked the feel, substantialness, and quality of the materials used in Defendant's apparel. Based upon her sister's firsthand experience with the clothing, Plaintiff became particularly interested in these products and wanted to independently determine whether they would be suitable purchases. Before purchasing them, Plaintiff wanted to determine their appearance, available colors and sizes, fit, fabric and material composition, price, availability, and other characteristics material to her purchasing decision.

6. Because Plaintiff carefully watches her spending, she also wanted to determine how the Upstate Cable Sweater and Quantum Travel Pant should be washed, dried, cleaned, and otherwise maintained. Plaintiff wanted to ensure that any clothing she purchased could be properly cared for and maintained so that it would last and provide lasting value for the money she spent. Plaintiff therefore considered the garments' material composition, durability, cleaning requirements, and care instructions important information in deciding whether Defendant's apparel constituted a practical and worthwhile purchase.

7. Plaintiff also wanted to determine whether Defendant maintained a physical retail store in New York where she could examine or purchase Defendant's merchandise in person. If no suitable New York retail location was available, Plaintiff wanted to determine the costs associated with having the merchandise delivered to her and whether insurance or other protection was included or available in connection with delivery. Plaintiff additionally wanted to determine whether the Upstate Cable Sweater and Quantum Travel Pant were available for purchase and, if either product was unavailable, whether Defendant offered comparable alternative apparel and whether discounts or other savings were available with respect to such alternatives.

8. Plaintiff could not independently accomplish these objectives. The Website contained accessibility barriers that interfered with NVDA's ability to identify and communicate important product information and the purposes of interactive controls. Plaintiff could not reliably interpret product images, navigate among merchandise, identify and understand available product options, obtain material information concerning the products in which she was interested, or confidently operate the controls necessary to investigate, select, and purchase Defendant's merchandise.

9. The barriers did more than cause inconvenience. They prevented Plaintiff from obtaining material information concerning merchandise she genuinely desired to investigate and purchase, including information necessary to evaluate the products' characteristics, care and maintenance requirements, availability, purchasing options, delivery costs, and overall value. As a result, Plaintiff was denied the opportunity afforded to sighted customers to independently evaluate Defendant's merchandise, make an informed purchasing decision, and shop privately, independently, and on equal terms.

10. Plaintiff remains interested in Defendant's merchandise, including the Upstate Cable Sweater and Quantum Travel Pant. Plaintiff intends to return to the Website to obtain the product,

care, availability, retail-location, delivery, pricing, and other information previously denied to her and to complete a purchase if the desired merchandise remains available, suitable for her needs, and consistent with her budget. She is presently deterred from doing so because she reasonably expects to encounter the same accessibility barriers unless Defendant remediates the Website. Once those barriers are removed, Plaintiff intends to return to independently evaluate Defendant's merchandise and available purchasing options and complete a purchase if the products meet her needs.

11. Plaintiff brings this civil action on behalf of herself and all others similarly situated to challenge Defendant's ongoing operation of an inaccessible Website in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq., the New York State Human Rights Law, N.Y. Exec. Law §§ 290 et seq., and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-100 et seq. Plaintiff seeks declaratory and injunctive relief requiring Defendant to remediate its Website, adopt accessibility policies, and ensure ongoing accessibility so that blind and visually impaired individuals may independently access the goods and services Defendant offers online.

**JURISDICTION & VENUE**

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States, including Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*.

13. This Court has supplemental jurisdiction over Plaintiff's related state and local law claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy as Plaintiff's federal ADA claims.

14. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff resides in Bronx County which is within this District, and accessed Defendant's website from within this District, and experienced the discriminatory barriers alleged

herein in this District. Courts in this Circuit have repeatedly held that venue is proper where the plaintiff experiences the discriminatory denial of access to a website. See, *Velazquez v. Don Roberto Jewelers, Inc.*, No. 1:22-cv-05049 (S.D.N.Y. 2023) (Ramos, J.) (venue proper where plaintiff encountered website barriers in the district); see also *Romero v. 88 Acres Foods, Inc.,* 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022).

15. Defendant is subject to personal jurisdiction in this District because it purposefully directs business activities toward Bronx consumers through its highly interactive ecommerce website www.rhone.com which allows users to browse inventory, review product information, create accounts, and complete purchases. Defendant ships products directly to New York residents, including Bronx County and derives substantial revenue from sales to consumers in this State. Courts in this Circuit have consistently held that operators of nationwide ecommerce websites are subject to personal jurisdiction in New York when they purposefully avail themselves of the privilege of conducting business here. See *Andrews v. Blick Art Materials, LLC,* 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539 (E.D.N.Y. 2018).

16. The United States Department of Justice has repeatedly confirmed that the ADA applies to the goods, services, privileges, and activities offered by public accommodations on the web. The DOJ's Guidance on Web Accessibility and the ADA states that the ADA's requirements apply to all services offered by public accommodations, including those offered online

17. This Court is empowered to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## **THE PARTIES**

18. Plaintiff MARIA DELVALLE is, and at all relevant times was, a resident of New York. Ms. DelValle is legally blind and visually impaired and is a member of the protected class of individuals with disabilities under the Americans with Disabilities Act, 42 U.S.C. § 12102(1)–(2),

its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the protections afforded under New York State and New York City law. As confirmed by her treating ophthalmologist, Jonathan N. Kruh, M.D., Ms. DelValle suffers from proliferative diabetic retinopathy associated with longstanding diabetes mellitus, which has caused severe and irreversible impairment of her vision. Dr. Kruh documented significantly decreased visual acuity, blurred vision, difficulty recognizing detail, and an impaired ability to perform activities requiring functional vision. He measured Ms. DelValle's visual acuity at 20/400 in her right eye and 20/200 in her left eye and further advised her to continue utilizing low-vision aids and screen-reading software. (See Ex. A – Maria DelValle Medical Report.)

19. Plaintiff is a proficient user of screen-reader technology, including NVDA, and relies upon keyboard navigation and accessible coding to browse, understand, and interact with websites. Because she cannot independently perceive and interpret information presented solely through visual means, Ms. DelValle depends upon businesses to design, construct, and maintain their websites in a manner compatible with screen-reading software. Proper semantic structure, meaningful alternative text, labeled interactive controls, descriptive link text, and accessible navigation are essential for Plaintiff to independently obtain information, investigate merchandise, make informed purchasing decisions, and access digital content.

20. Defendant RHONE APPAREL, INC. ("Rhone" or "Defendant") owns, operates, maintains, and/or controls the commercial Website www.rhone.com (the "Website"), through which Defendant advertises, displays, markets, and sells apparel and related merchandise to members of the public, including consumers residing in New York.

21. Defendant controls the policies, practices, design, coding, content, maintenance, and operation of the Website and is responsible for ensuring that the Website, and the goods, services, privileges, advantages, and accommodations offered through it, are accessible to blind and visually

impaired consumers.

22. The Website is a significant component of Defendant's retail operations. It provides consumers with access to Defendant's merchandise, product descriptions, images, prices, sizes, colors, availability information, purchasing controls, shopping-cart functionality, customer-service information, policies, and other information and services associated with Defendant's retail business.

23. Defendant offers sighted consumers the ability to independently investigate its products, compare merchandise and available options, obtain information material to purchasing decisions, investigate retail-store and delivery options, select merchandise, and complete transactions through the Website. Defendant has failed to provide Plaintiff and other blind and visually impaired consumers with an equivalent opportunity to independently access and use those same goods, services, privileges, advantages, and accommodations.

24. The removal of the barriers alleged herein is readily achievable and may be accomplished through established accessibility practices, including the provision of meaningful text alternatives, programmatically determinable labels, descriptive links, properly structured headings and forms, accessible names for interactive elements, and keyboard-operable functionality.

25. Defendant's failure to provide an accessible Website has denied Plaintiff full and equal access to Defendant's merchandise and retail services and has interfered with her ability to independently investigate and evaluate the specific products in which she is interested, obtain information material to her purchasing decisions, and determine whether to purchase Defendant's merchandise.

## NATURE OF ACTION

26. This action arises under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq., challenging Defendant's operation of a public-facing website that denies blind and

visually impaired individuals full and equal access. Plaintiff, a legally blind resident of this District, attempted to access Defendant's Website using screen-reading software but encountered multiple access barriers that prevented meaningful engagement with its services. Defendant's failure to design and maintain its Website in accordance with the Web Content Accessibility Guidelines (WCAG 2.1) constitutes unlawful discrimination and violates federal accessibility standards.

27. The Internet has become a vital source of information and a primary tool for conducting everyday activities such as shopping, learning, banking, researching, and communicating — for sighted, blind, and visually impaired individuals alike.

28. In today's digital environment, blind and visually impaired individuals access websites using keyboards in conjunction with screen access software that vocalizes visual content or displays it on a refreshable Braille device. This technology, known as screen-reading software, is currently the only method by which blind or visually impaired persons may independently access the Internet. Unless websites are properly coded to interface with screen-reading software, blind and visually impaired users are unable to fully access the information, products, and services offered online.

29. Users of Windows-enabled computers have access to several screen-reading programs, including Job Access With Speech ("JAWS"), which is commercially available, and NonVisual Desktop Access ("NVDA"), which is open-source. These tools are indispensable for blind users and represent the only means by which they can independently navigate the Internet.

30. Plaintiff, MARIA DELVALLE is a blind, visually impaired individual and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the NYSHRL, NYCHRL, and NYCRL. For screen-reading software to function, website content must be capable of being rendered into text. If the underlying code fails to support this conversion, blind users are unable to access the same content available to

sighted users. Screen-reading software translates the visual internet into an auditory equivalent, reading page content, announcing links, buttons, headings, labels, and other interface elements so the user can navigate through keyboard commands.

31. The World Wide Web Consortium ("W3C") has published the Web Content Accessibility Guidelines ("WCAG") 2.0 and 2.1, which establish internationally recognized standards for digital accessibility. These guidelines are widely adopted by private entities and government agencies, including the U.S. Department of Justice, and have been recognized by courts as the appropriate benchmark for ADA compliance.

32. Non-compliant websites pose recurring barriers to blind and visually impaired users. Common violations include, but are not limited to:

a. Missing text equivalents for non-text elements (e.g., product images without alternative text);

b. Unlabeled frames and navigation regions;

c. Scripts without accessible alternatives;

d. Inaccessible forms and input fields;

e. Content conveyed solely through visual presentation;

f. Inability to resize text without loss of functionality;

g. Time limits that cannot be adjusted or disabled;

h. Missing or ambiguous page titles and headings;

i. Links lacking descriptive context;

j. Keyboard focus indicators that are not discernible;

k. Undetectable default language settings;

l. Components that trigger unexpected context changes;

m. Settings that alter context without user notice;

n. Input fields lacking labels or instructions;

o. Improperly nested markup, duplicate attributes, and non-unique IDs;

p. Inaccessible PDF files;

q. User interface elements whose roles and states cannot be programmatically determined; and/or

r. Empty buttons, empty links, and unlabeled interactive controls that prevent a screen reader user from independently navigating and completing a transaction.

**STATEMENT OF FACTS**

33. Plaintiff MARIA DELVALLE is a legally blind and visually impaired consumer residing in New York. She suffers from proliferative diabetic retinopathy associated with longstanding diabetes mellitus, which has caused significant and irreversible impairment of her vision. Her treating ophthalmologist, Jonathan N. Kruh, M.D., documented significantly decreased visual acuity, blurred vision, difficulty recognizing detail, and an impaired ability to perform activities requiring functional vision. Dr. Kruh measured Plaintiff's visual acuity at 20/400 in her right eye and 20/200 in her left eye and documented proliferative diabetic retinopathy complicated by traction retinal detachment. Dr. Kruh further advised Plaintiff to continue utilizing low-vision aids and screen-reading software. (See Exhibit A.)

34. Plaintiff's visual impairment substantially limits her major life activity of seeing and materially affects her ability to independently perceive and obtain visually presented information. She therefore requires assistive technology to independently access digital content and obtain information that sighted consumers are able to perceive visually.

35. As a blind and visually impaired consumer, Plaintiff relies upon screen-reading software, including NonVisual Desktop Access ("NVDA"), and keyboard navigation to browse

websites, obtain product descriptions, investigate merchandise, compare products and prices, determine product availability, and complete online purchases. Without a properly coded website that is compatible with her assistive technology, Plaintiff cannot independently access online shopping information and services on equal terms with sighted consumers.

36. Plaintiff developed a genuine interest in Defendant's apparel after speaking with her sister, who had purchased several articles of clothing from Defendant and told Plaintiff how much she liked the feel and substantialness of the materials. Her sister's firsthand experience caused Plaintiff to investigate Defendant's merchandise for herself rather than merely browse apparel generally.

37. In particular, Plaintiff became interested in Defendant's Upstate Cable Sweater for herself and the Quantum Travel Pant. Plaintiff wanted to investigate these particular Rhone products because her sister's favorable experience with the feel and substantialness of Defendant's clothing caused Plaintiff to believe that Defendant's apparel might provide the quality and durability she wanted in clothing she purchased.

38. Plaintiff carefully monitors her spending. Accordingly, before purchasing Defendant's merchandise, Plaintiff wanted to obtain sufficient information to determine whether the clothing represented a practical and worthwhile expenditure of her money. With respect to the Upstate Cable Sweater and Quantum Travel Pant, Plaintiff wanted to determine their appearance, available colors and sizes, fit, fabric and material composition, price, availability, and other characteristics relevant to her purchasing decision.

39. Plaintiff was particularly interested in the proper cleaning and care of Defendant's apparel. Because Plaintiff carefully watches her spending, she wanted clothing that she could properly maintain and use for an extended period rather than purchase an article without knowing how it should be cared for. Plaintiff therefore wanted to determine the applicable washing, drying,

cleaning, and other care instructions so that she could evaluate the effort and expense involved in maintaining the garments and preserve their condition if she purchased them.

40. Plaintiff also wanted to determine whether Defendant maintained a physical retail store in New York where she could examine or purchase Defendant's merchandise in person. If no suitable retail location was available to her, Plaintiff wanted to determine the costs associated with having the merchandise delivered to her and whether insurance or other protection was included or available in connection with delivery.

41. Plaintiff additionally wanted to determine whether the Upstate Cable Sweater and Quantum Travel Pant were available for purchase. If either desired product was unavailable, Plaintiff wanted to identify comparable alternative apparel offered by Defendant, compare those alternatives with the products she originally sought, and determine whether Defendant offered any discounts or other savings in connection with alternative merchandise.

42. On September 10, 2026, Plaintiff visited Defendant's Website using NVDA and keyboard navigation with the genuine intent to investigate Defendant's Upstate Cable Sweater and Quantum Travel Pant and obtain the information necessary to determine whether to purchase the merchandise.

43. Plaintiff returned to Defendant's Website on September 15, 2026, and again on October 5, 2026, for the same concrete shopping purposes. Thus, Plaintiff's interest in Defendant's merchandise was not limited to an isolated or incidental encounter with the Website. On multiple occasions over the course of several weeks, Plaintiff attempted to use Defendant's Website to investigate specific Rhone apparel that she was genuinely considering purchasing.

44. During these visits, Plaintiff attempted to use NVDA and keyboard navigation to identify and understand the products in which she was interested, obtain available product information, determine available product options, investigate information relevant to caring for and

maintaining the garments, determine their availability, and access and operate the Website functions necessary to continue toward a purchase.

45. Plaintiff was unable to accomplish these objectives independently. Accessibility barriers on Defendant's Website interfered with the ability of NVDA to identify, interpret, and communicate information and functionality presented through the Website. As a result, Plaintiff could not reliably obtain and understand material information she sought concerning the merchandise or confidently navigate and operate the Website in the manner available to sighted consumers.

46. Plaintiff likewise was unable to independently obtain all of the information she sought concerning whether she could purchase Defendant's merchandise at a New York retail location or, alternatively, the delivery-related information relevant to an online purchase. She also could not independently and reliably determine the availability of her desired merchandise and investigate appropriate alternatives and potential savings if her preferred products were unavailable.

47. The barriers Plaintiff encountered were not merely technical irregularities divorced from her shopping experience. They directly interfered with the specific activities Plaintiff went to Defendant's Website to perform and prevented her from obtaining information she considered material to deciding whether, how, and at what overall cost she would purchase Defendant's apparel.

48. Plaintiff's personal experiences are corroborated by accessibility testing of Defendant's Website. The SortSite reports concerning the Website document accessibility deficiencies affecting numerous pages of Defendant's Website. These findings provide technical corroboration for the functional barriers Plaintiff encountered while attempting to use the Website with NVDA and keyboard navigation.

49. The accessibility testing corroborates the barriers Plaintiff personally encountered while using the Website with NVDA and keyboard navigation and demonstrates that those barriers

were not isolated to Plaintiff's individual experience. The documented accessibility deficiencies affected the Website's ability to communicate content and functionality accessibly, including information and interactive features necessary for Plaintiff to independently investigate Defendant's merchandise and pursue an online purchase. Exhibit B

50. Because of these barriers, Plaintiff could not independently obtain all of the information she considered necessary to decide whether the Upstate Cable Sweater and Quantum Travel Pant were appropriate purchases; could not meaningfully evaluate the care, maintenance, availability, and purchasing considerations important to her; and could not confidently proceed toward an informed purchase of Defendant's merchandise.

51. The accessibility barriers therefore denied Plaintiff the privacy, independence, and equal opportunity afforded to sighted consumers. Plaintiff was unable to independently perform shopping activities that Defendant makes available through its Website to consumers who do not require screen-reading technology, including investigating specific merchandise, obtaining information material to a purchasing decision, comparing available choices, and proceeding toward an online transaction.

52. Plaintiff remains genuinely interested in Defendant's merchandise, including the Upstate Cable Sweater and Quantum Travel Pant. Her interest is based upon her sister's favorable experience with Defendant's apparel, the particular products she identified for investigation, and her desire to determine whether those garments possess the qualities, durability, care characteristics, availability, and overall value she seeks before spending her money.

53. Plaintiff intends to return to Defendant's Website after the accessibility barriers are removed to obtain the information previously denied to her, determine whether the Upstate Cable Sweater and Quantum Travel Pant remain available and suitable for her intended purposes, investigate suitable alternatives if necessary, and purchase Defendant's merchandise if it meets her

needs and budget. Plaintiff is presently deterred from returning because, based upon the barriers she encountered during her three prior visits, she reasonably expects that those barriers will again interfere with her ability to independently investigate and purchase Defendant's merchandise.

54. Unless Defendant remediates the Website and maintains its accessibility, Plaintiff will continue to be denied full and equal access to Defendant's online goods and services and will face the same threatened injury when she returns for the specific shopping purposes alleged herein. Plaintiff therefore seeks prospective injunctive relief requiring Defendant to remove the accessibility barriers and provide blind and visually impaired consumers with full and equal access to the goods and services offered through the Website.

## CLASS ACTION ALLEGATIONS

55. Plaintiff MARIA DELVALLE brings this action on behalf of herself, and all others similarly situated pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure. Plaintiff seeks certification of a nationwide class consisting of:

All blind and visually impaired individuals in the United States who use screen-reading software or other assistive technology and who have attempted to access www.rhone.com and, as a result of Defendant's failure to design, construct, maintain, and operate the Website in an accessible manner, were denied full and equal access to the goods, services, information, privileges, advantages, and accommodations offered through the Website.

56. Plaintiff also seeks certification of a New York subclass consisting of:

All legally blind individuals residing in the State of New York, who have attempted to access www.rhone.com and were denied equal access to the goods, services, and information offered thereon.

57. The members of the Class and Subclass are so numerous that joinder of all members is impracticable. Defendant operates a nationwide ecommerce platform and markets its products to

consumers throughout the United States. Upon information and belief, thousands of blind and visually impaired individuals have attempted to access www.rhone.com and have been denied equal access due to the systemic accessibility barriers confirmed by SORT SITE audits, and by Plaintiff's declarations, which corroborates the automated audit results and confirms that Defendant's Website contains pervasive WCAG 2.1 Level A and AA violations — including missing alternative text, empty buttons, empty links, missing form labels, broken ARIA references, inaccessible focus indicators, and nonsemantic navigation elements — that uniformly impact blind users across multiple pages and multiple visits. These barriers are not isolated anomalies but reflect a site-wide pattern of non-compliance that affects all blind consumers who attempt to access Defendant's website, thereby rendering the Class and Subclass sufficiently numerous for certification.

58. Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting only individual members. These common questions include, but are not limited to:

- Whether Defendant's Website contains accessibility barriers that prevent blind individuals from accessing its goods and services;
- Whether Defendant's failure to make its Website accessible violates Title III of the ADA;
- Whether Defendant's failure to maintain accessible digital content violates New York State and New York City disability rights laws;
- Whether Defendant's conduct constitutes ongoing discrimination against blind consumers; and
- Whether injunctive relief is warranted to require Defendant to bring its Website into compliance with WCAG 2.1.

59. Plaintiff's claims are typical of the claims of the Class and Subclass because Plaintiff, like all members of the Class, is legally blind, uses screenreading software, and was denied equal

access to Defendant's Website due to the same systemic accessibility barriers identified in the SortSite and WAVE reports.

60. Plaintiff will fairly and adequately represent and protect the interests of the Class and Subclass. Plaintiff has retained counsel experienced in ADA litigation, class actions, and digital accessibility matters.

61. Defendant has acted or refused to act on grounds generally applicable to the Class and Subclass, making final injunctive relief appropriate with respect to the Class as a whole. Defendant continues to operate an inaccessible Website without any policy, plan, or practice to ensure accessibility, thereby subjecting all blind users to the same discriminatory barriers.

62. Certification under Rule 23(b)(2) is appropriate because Defendant has failed to design, construct, maintain, and operate its Website in compliance with WCAG 2.1, and because Defendant's actions apply generally to all blind individuals who attempt to use the Website. Declaratory and injunctive relief is the only appropriate remedy to ensure equal access for Plaintiff and the Class.

## <u>FIRST CAUSE OF ACTION</u>
## (Violations of the ADA, 42 U.S.C. § 12182 *et seq.)*

63. Plaintiff, **MARIA DELVALLE**, on behalf of herself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

1. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

64. Defendant's Website, www.rhone.com is a service of a place of public accommodation and a digital gateway through which Defendant offers goods, services, privileges, and advantages to the general public. As such, the Website must be equally accessible to all consumers, including blind and visually impaired individuals who rely on screen-reading technology.

65. Defendant has failed to design, construct, maintain, and operate its website in a manner that is fully accessible to blind and visually impaired individuals, in violation of Title III of the ADA and its implementing regulations.

66. Defendant's website contains numerous accessibility barriers—including missing alternative text, broken ARIA references, unlabeled buttons, inaccessible pop-ups, improper heading structure, and aria-hidden focusable content—that prevent blind users from perceiving, navigating, and interacting with the website.

67. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

68. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, inter alia:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or

> otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

69. The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits her major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, www.rhone.com has not been provided services that are provided to other patrons who are not disabled; and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct, as the violations are ongoing. Upon information and belief, Defendant has received prior notice of these accessibility anomalies through consumer complaints, automated audit findings, and industry-standard compliance tools. Despite this notice, Defendant has failed to implement WCAG-compliant remediation, demonstrating a pattern of disregard for its obligations under federal law.

70. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section **Prayer For Relief** below.

**SECOND CAUSE OF ACTION**
**(New York State Human Rights Law)**
**("NYSHRL")**

71. Plaintiff, **MARIA DELVALLE ,** on behalf of herself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

72. At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 *et seq.*, covers the actions of the Defendants.

73. Plaintiff, at all times relevant to this action, as a result of her loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

74. Defendants, at all relevant times to this action, own and operate a place of public accommodation, the subject Website, www.rhone.com within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

75. Plaintiff has visited the Website, www.rhone.com on a number of occasions and has encountered barriers to her access that exist.

76. Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

77. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

78. Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof

without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

79. The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

80. Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

81. Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass and violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

82. Absent injunctive relief, Defendant's discrimination will continue against Plaintiff

and Subclass, causing irreparable harm.

83. Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

84. Plaintiff repeats and realleges every allegation contained in the foregoing paragraphs as if fully set forth herein.

85. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes Defendant denies, that Defendant's website contains access barriers denying blind customers full and equal access to the products, services, and facilities offered through the website.

86. A judicial declaration is necessary and appropriate at this time so that the parties may know their respective rights and duties and act accordingly.

## THIRD CAUSE OF ACTION
**(Violation of New York State Civil Rights Law)**
**("NYCRL")**

87. Plaintiff, **MARIA DELVALLE,** on behalf of herself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

88. Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Notice to Attorney General)

89. Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and

privileges thereof. N.Y. Civ. Rights Law § 40.

90. No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

91. § 292 of Article 15 of the N.Y. Executive Law deems a disability, a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

92. Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website, www.rhone.com is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

93. Defendant intentionally and willfully failed to remove the barriers on their Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

94. Defendant has failed to take any steps to halt and correct its discriminatory conduct and discriminate against the Plaintiff and the Subclass members.

95. Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id..*.

96. Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq.*

**FOURTH CAUSE OF ACTION**
**(Violations of the New York City Human Rights Law)**
**("NYCHRL")**

97. Plaintiff, **MARIA DELVALLE,** on behalf of herself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

98. N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

99. Defendant is subject to NYCHRL because it owns and operates the Website, www.rhone.com making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

100. Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing the Website and the services integrated completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

101. Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

102. Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8107(4)(a) and § 8-107(15)(a), in that Defendant has:

a. constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

b. constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c. failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

103. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

104. As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

105. Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

106. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

107. Plaintiff is also entitled to reasonable attorneys' fees and costs.

108. Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies,

procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

**FIFTH CAUSE OF ACTION**
**(Declaratory Relief)**

109. Plaintiff, **MARIA DELVALLE** , on behalf of herself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

110. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.*, prohibiting discrimination against the blind.

111. A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully requests that this Court grant the following relief:

- A preliminary and permanent injunction prohibiting Defendant from violating Title III of the ADA, 42 U.S.C. § 12182 et seq.;
- A preliminary and permanent injunction requiring Defendant to take all steps necessary to make www.rhone.com fully accessible to and usable by blind and visually impaired individuals, including through adoption and maintenance of WCAG-conforming accessibility measures;

- A declaration that Defendant owns, maintains, controls, and/or operates its website in a manner that discriminates against blind individuals and fails to provide equal access as required by law;
- An order certifying the proposed Class and New York Subclass under Fed. R. Civ. P. 23, appointing Plaintiff as Class Representative, and appointing him counsel as Class Counsel;
- An award of costs, litigation expenses, and reasonable attorneys' fees to the fullest extent permitted by law; and
- Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated: New York, New York
November 9, 2026

Respectfully submitted,
**JOSEPH & NORINSBERG, LLC**

*/s/ Robert Schonfeld*
Robert Schonfeld, Esq
*Attorneys for Plaintiff*
825 Third Avenue, Suite 2100
New York, New York 10022
Tel. No.: (212) 227-5700
Fax No.: (212) 656-1889
rschonfeld@employeejustice.com